**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| TERNIUM USA INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; RODNEY S. SCOTT, U.S. CUSTOMS & BORDER PROTECTION COMMISSIONER,<br><br>Defendants. | | Court No. 26-05039 |

**COMPLAINT**

1. Plaintiff Ternium USA Inc. ("Plaintiff"), by and through the undersigned counsel, White & Case LLP, alleges and states as follows:

2. This action concerns Defendants' collection of unlawful tariffs on products imported by Plaintiff under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*.

3. Beginning in February 2025, President Donald J. Trump, relying on IEEPA, issued executive orders that modified the Harmonized Tariff Schedule of the United States ("HTSUS") and imposed tariffs on goods from almost every country in the world (collectively referred to as "IEEPA Tariffs").

4. Plaintiff is an importer of record that paid the IEEPA Tariffs on imported goods.

5. On February 20, 2026, the U.S. Supreme Court held that the IEEPA Tariffs were unlawful. *See Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (U.S. 2026) (affirming *V.O.S. Selections CAFC*) ("*Learning Resources, Inc.*").

6. Plaintiff seeks through this action to ensure its right to receive a complete refund of the unlawful tariffs it has paid to Defendant, U.S. Customs & Border Protection ("CBP").

**PARTIES**

7. Plaintiff, Ternium USA Inc., is an importer of record that imported goods that were subject to IEEPA Tariffs, and has deposited or paid the tariffs imposed by President Donald J. Trump's (1) February 2025 executive orders that imposed tariffs on goods from Canada, Mexico, and China to ostensibly address illegal immigration and the influx of illicit drugs, and (2) April 2025 executive order that imposed tariffs on goods from almost every country in the world, purportedly to address trade deficits with U.S. trade partners. *See* Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("IEEPA Canada Order"); Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025) ("IEEPA Mexico Order"); Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025) ("IEEPA China Order") (together with the IEEPA Canada Order and the IEEPA Mexico Order, the "IEEPA Trafficking Orders"); Exec. Order No. 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("IEEPA Reciprocal Order") (together with the IEEPA Trafficking Orders, the "IEEPA Tariff Orders").

8. Defendant, the United States, collected the IEEPA Tariffs and is a statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i). Defendant CBP is the executive agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the IEEPA Tariffs imposed by the IEEPA Tariff Orders.

9. Defendant Rodney S. Scott is the Commissioner of CBP. In this capacity, Mr. Scott oversees CBP's collection of tariffs paid by Plaintiff under the IEEPA Tariff Orders.

## **JURISDICTION**

10. The Court of International Trade ("CIT") has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i), which gives the court "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for – (A) revenue from imports or tonnage; (B) tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of revenue; (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section."

11. This action "arises out of {a} law of the United States providing for . . . revenue from imports . . . {or} tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of revenue" because the IEEPA Tariff Orders described above modified the HTSUS to impose duties on imports, to raise "revenue from imports" or "for reasons other than the raising of revenue." *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350, 1365–67 (Ct. Int'l Trade 2025) ("*V.O.S. Selections CIT*"); *aff'd*, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1329 (Fed. Cir. 2025) ("*V.O.S. Selections CAFC*") (affirming this Court's jurisdiction over the suit); *aff'd*, *Learning Resources, Inc.*, 607 U.S. at 239 n.1 (finding that *V.O.S. Selections* falls "within the exclusive jurisdiction of the CIT").

12. The Court has all the powers at law and in equity of a United States district court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against

the United States and can order all appropriate relief, including declaratory judgments, reliquidation of entries, and injunctions. 28 U.S.C. § 2643(a)(1), (c)(1); *see also* Slip Op. 25-154, *AGS Co. Automotive Sols. v. U.S. Customs & Border Prot.*, Consol. Court No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) at 6 ("the USCIT has 'the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties'"); *United States Shoe Corp. v. United States*, 22 C.I.T. 880 (1998) (establishing a process for refunding exporters for any payment of Harbor Maintenance Taxes that were deemed unlawful by the U.S. Supreme Court); *AM/NS Calvert LLC v. United States*, 654 F. Supp. 3d 1324, 1332 (Ct. Int'l Trade 2023) (citing 5 U.S.C. § 702) ("Upon a finding of unlawful agency action in a case properly brought under the CIT's residual jurisdiction, the APA authorizes injunctive relief requiring reliquidation of finally liquidated entries because no 'other statute . . . expressly or impliedly forbids' such relief.").

## STANDING

13. Plaintiff is an importer of steel products from Mexico and Guatemala. Its imported products have been subject to IEEPA Tariffs through the IEEPA Tariff Orders.

14. Plaintiff has standing to sue because it is "suffering legal wrong because of agency action" and is "adversely affected or aggrieved by agency action within the meaning of" the Administrative Procedure Act ("APA"). 5 U.S.C. § 702; 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5"). Tariffs imposed and implemented by Defendants pursuant to the IEEPA Tariff Orders adversely affected, aggrieved, and injured Plaintiff by causing Plaintiff to pay these unlawful duties.

15. An order of this Court providing the requested relief will redress Plaintiff's economic harm caused by Defendants' conduct.

16. This action is necessary to ensure that Defendants will issue complete refunds on Plaintiff's liquidated entries. *See V.O.S. Selections v. Trump*, Nos. 2026-1895, -1897, -1899, ECF No. 19 at 3–5 (Fed. Cir. Aug. 10, 2026) (contesting this Court's authority to issue a universal injunction requiring reliquidation of entries and refund of IEEPA duties as to importers without an importer-specific reliquidation order). Defendants have represented to multiple courts, including this Court, that they would not oppose a court order requiring them to issue refunds to specific plaintiffs in each case, including by reliquidating entries, including finally liquidated entries, if the IEEPA Tariffs were deemed unlawful in a final unappealable court decision. *See V.O.S. Selections, Inc. v. Trump*, No. 25-1812, ECF No. 6 at 25 (Fed. Cir. May 29, 2025); *V.O.S. Selections, Inc. v. Trump*, 2025 WL 1649290, at *1 (Fed. Cir. June 10, 2025) (en banc) (per curiam) (granting a stay pending appeal); *see also Princess Awesome, LLC v. U.S. Customs & Border Prot.*, Court No. 25-00078, Joint Stipulation ¶ 2, ECF No. 17 (Ct. Int'l Trade May 28, 2025) (noting that the U.S. Government "would not oppose the Court's authority to order reliquidation of entries of merchandise subject to the" IEEPA Tariffs); *Learning Res., Inc. v. Trump*, No. 25-cv-01248-RC, ECF No. 41 at 13 (D.D.C. June 2, 2025).

## **<u>TIMELINESS OF THIS ACTION</u>**

17. A plaintiff must commence an action under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

18. Plaintiff's claims against the tariffs imposed by the IEEPA Tariff Orders accrued at the earliest on February 1, 2025, when the President issued the first executive orders invoking IEEPA

to impose tariffs on imports from Mexico and Canada. *See* IEEPA Mexico Order, 90 Fed. Reg. at 9,117; IEEPA Canada Order, 90 Fed. Reg. at 9,113.

19. Therefore, Plaintiff has timely filed this action.

## FACTUAL BACKGROUND

### I. IEEPA Trafficking Orders

20. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and the People's Republic of China ("China"). See IEEPA Mexico Order, 90 Fed. Reg. at 9,117; IEEPA Canada Order, 90 Fed. Reg. at 9,113; IEEPA China Order, 90 Fed. Reg. at 9,121.

21. The President explicitly invoked IEEPA when imposing these tariffs. *See* IEEPA Mexico Order, 90 Fed. Reg. at 9,117 ("By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) (IEEPA) . . . ."); IEEPA Canada Order, 90 Fed. Reg. at 9,113 (same); IEEPA China Order, 90 Fed. Reg. at 9,121 (same).

22. The IEEPA Mexico Order imposed an additional 25 percent ad valorem tariff on goods imported from Mexico. IEEPA Mexico Order, 90 Fed. Reg. at 9,118. The IEEPA Canada Order imposed an additional 25 percent ad valorem tariff on goods imported from Canada, with some exceptions. IEEPA Canada Order, 90 Fed. Reg. at 9,114. The IEEPA China Order imposed an additional 10 percent ad valorem tariff on goods imported from China. See IEEPA China Order, 90 Fed. Reg. at 9,122.

23. The President subsequently amended the IEEPA Trafficking Orders on multiple occasions, including by raising the additional tariff on imports from China to 20 percent, later lowering it to 10 percent, and raising the additional tariff on imports from Canada from 25 percent to 35 percent. *See* Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025); Exec. Order No. 14357, Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 50,725 (Nov. 7, 2025); Exec. Order No. 14325, Amendment To Duties To Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 37,957 (Aug. 6, 2025). In each instance, the President continued to rely on IEEPA as the legal basis for the tariffs.

## II. IEEPA Reciprocal Order

24. On April 2, 2025, the President issued the IEEPA Reciprocal Order. *See* IEEPA Reciprocal Order, 90 Fed. Reg. at 15,041. The President cited IEEPA as authorizing the imposition of these tariffs. *See* IEEPA Reciprocal Order, 90 Fed. Reg. at 15,041 ("By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) (IEEPA) . . . .").

25. The IEEPA Reciprocal Order immediately imposed a 10% *ad valorem* baseline tariff on nearly all imports into the United States, effective April 5, 2025, and added higher "reciprocal" tariffs—ranging from 11% to 50%—on imports from 57 countries, effective April 9, 2025, as detailed in Annex I to the Order. *See* IEEPA Reciprocal Order, 90 Fed. Reg. at 15,045, 15,049–50.

26. Subsequently, the President made several amendments to the IEEPA Reciprocal Order.

27. On April 9, 2025, the President suspended the country-specific tariffs on all countries for 90 days except for China. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025).

28. On July 7, 2025, the President extended the suspension of the reciprocal tariff rates (again excluding China) under Executive Order 14266 from July 9, 2025, to August 1, 2025. Exec. Order No. 14316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823 (Jul. 10, 2025).

29. On July 31, 2025, the President signed Executive Order 14326 to impose the country-specific reciprocal tariff rates that had been suspended and to adjust individual tariff rates applied to various countries, effective on August 1, 2025. Exec. Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963 (Aug. 6, 2025).

## III. CBP's Role in the Collection of IEEPA Tariffs

30. In each of the executive orders imposing IEEPA Tariffs, the President instructed how the tariffs were to be implemented via modification of the HTSUS. CBP is the agency responsible for collecting tariffs on all imported merchandise pursuant to the tariff rates set out in the HTSUS, which included IEEPA Tariffs at the time of Plaintiff's imports. 19 U.S.C. §§ 1202, 1500, 1502.

31. Usually, when importing or "entering" goods into the United States, the importer of record declares the value, origin, and HTSUS classification of the goods, and pays the corresponding estimated duty based on this declaration. *See* 19 U.S.C. § 1484.

32. CBP reviews the importer's declaration and determines the final value, classification, duty rate, and total duty owed. *See* 19 U.S.C. § 1500. CBP then "liquidates" the entry and notifies the importer of any additional payment due to CBP or any refund owed to the importer. *See id.*

Liquidation is thus "the final computation or ascertainment of duties on entries . . . ." 19 C.F.R. § 159.1.

33. Liquidation must occur within one year of "entry," 19 U.S.C. § 1504(a), unless CBP extends the deadline. CBP can extend the deadline by up to one year if the importer requests the extension and shows good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

34. Recently, in the context of a challenge to the IEEPA Tariffs, this Court reaffirmed that "the USCIT has 'the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties.'" Slip Op. 25-154, *AGS Co. Automotive Sols. v. U.S. Customs & Border Prot.*, Consol. Court No. 25-00255 at 6 (Ct. Int'l Trade Dec. 15, 2025) (quoting *In re Section 301 Cases*, 524 F. Supp. 3d at 1363). Therefore, because this Court has jurisdiction over this action under 28 U.S.C. § 1581(i), it has authority to order reliquidation. *Id.*

35. From June 27, 2025, through May 29, 2026, CBP liquidated Plaintiff's entries that were subject to IEEPA Tariffs and are covered by this complaint.

## IV. <u>Challenges to the IEEPA Tariffs</u>

36. On April 14, 2025, several companies filed an action in this Court challenging, in relevant part, the legality of the IEEPA Tariff Orders and their subsequent amendments. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-00066, ECF No. 2 (Ct. Int'l Trade Apr. 14, 2025).

37. On May 28, 2025, this Court declared that the tariffs imposed by the President under IEEPA were unlawful, and permanently enjoined the collection of tariffs under the IEEPA Tariff Orders. *V.O.S. Selections CIT*, 772 F. Supp. 3d. at 1383. The Government appealed this Court's decision.

38. On August 29, 2025, after staying enforcement of this Court's injunction while considering the Government's appeal, the U.S. Court of Appeals for the Federal Circuit ("CAFC") affirmed this Court's ruling and declared that the IEEPA tariffs are "contrary to law." *V.O.S. Selections CAFC*, 149 F.4th at 1340, *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). The CAFC held that IEEPA "did not give the President wide-ranging authority to impose tariffs of the nature of the Trafficking and Reciprocal Tariffs simply by use of the term 'regulate . . . importation.'" *V.O.S. Selections CAFC*, 149 F.4th at 1337. The CAFC noted that the term "regulate" "must be read in the context of" the rest of the IEEPA statute which does not "involve monetary actions or suggest the power to tax or impose tariffs." *V.O.S. Selections CAFC*, 149 F.4th at 1333–34. Moreover, the court found that "{b}oth the Trafficking Tariffs and the Reciprocal Tariffs are unbounded in scope, amount, and duration" and "apply to nearly all articles imported into the United States (and, in the case of the Reciprocal Tariffs, apply to almost all countries), impose high rates which are ever-changing and exceed those set out in the HTSUS, and are not limited in duration{,}" thereby "assert{ing} an expansive authority that is . . . beyond the authority delegated to the President by IEEPA." *V.O.S. Selections CAFC*, 149 F.4th at 1338. The Government petitioned the U.S. Supreme Court for a writ of *certiorari* requesting review of the CAFC's judgment in *V.O.S. Selections CAFC*.

39. In a separate case involving a different group of importers than those involved in the *V.O.S. Selections CIT* and *V.O.S. Selections CAFC* cases, the U.S. District Court for the District of Columbia held that IEEPA does not authorize the president to impose tariffs. *See Learning Resources Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit.

40. Plaintiffs in *Learning Resources, Inc.* filed a petition for a writ of *certiorari* before judgment at the U.S. Supreme Court prior to the judgment of the Court of Appeals for the D.C. Circuit. On September 9, 2025, the U.S. Supreme Court granted *certiorari* in *Learning Resources, Inc*. and consolidated the case with *V.O.S. Selections*.

41. On February 20, 2026, the U.S. Supreme Court issued its opinion and order in the consolidated action *Learning Resources, Inc.*, affirming the judgment of the CAFC in *V.O.S. Selections*. *Learning Resources, Inc.*, 607 U.S. at 255.[1] First, the U.S. Supreme Court reiterated that, under Article I, section 8 of the U.S. Constitution, the power to impose tariffs lies with Congress, and because "the President enjoys no inherent authority to impose tariffs during peacetime{,}" this authority must be delegated to the Executive Branch by Congress via statute. *Learning Resources, Inc.*, 607 U.S. at 230. After examining the text of IEEPA, the sole statutory basis invoked by the President for the IEEPA tariffs, the U.S. Supreme Court held that "the power to 'regulate . . . importation,' as granted to the President in IEEPA," does not include "the power to impose tariffs." *Learning Resources, Inc.*, 607 U.S. at 251.

42. That same day, President Trump issued Executive Order 14389 ending the IEEPA Tariff Orders and any amendments because of the Supreme Court's decision. *See* Exec. Order No. 14389, *Ending Certain Tariff Actions*, 91 Fed. Reg. 9,437 (Feb. 25, 2026). On February 22, 2026, CBP issued guidance announcing that "{d}uties imposed pursuant to IEEPA under the following presidential actions, including all modifications and amendments, will no longer be in effect and will no longer be collected for goods entered for consumption or withdrawn from warehouse for

[1] The U.S. Supreme Court vacated the district court's judgment in *Learning Resources Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025) because it found that the case fell within the exclusive jurisdiction of the U.S. Court of International Trade. *Learning Resources, Inc.*, 607 U.S. at 239 n.1.

consumption, on or after 12:00 a.m. eastern time on February 24, 2026." CSMS # 67834313 - Ending Collection of International Emergency Economic Powers Act Duties (U.S. Customs and Border Prot. Feb. 22, 2026).

43. On March 4, 2026, this Court ordered CBP "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties{,} . . . to liquidate those entries without regard to the IEEPA duties." *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 21 at 2–3 (Ct. Int'l Trade March 4, 2026). On March 5, 2026, this Court amended its order to apply to "any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026) . . . ." *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 29 at 2–3 (Ct. Int'l Trade March 5, 2026).

44. On March 6, 2026, in light of a declaration made by CBP regarding the refund process, this Court suspended its March 5 order to the extent that it directed "immediate compliance." *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 33 at 1 (Ct. Int'l Trade March 6, 2026). On March 27, 2026, this Court amended its order dated March 5 to include the requirement that "{a}ny liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties." *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 50 at 1 (Ct. Int'l Trade March 27, 2026); *see also Euro-Notions Florida, Inc. v. United States*, No.25-00595, ECF No. 12 at 3 (Ct. Int'l Trade April 7, 2026) (implementing the same order in *Euro-Notions Florida, Inc.* following the voluntary dismissal of *Atmus Filtration, Inc.*).

45. On June 3, 2026, the United States timely appealed this Court's order in *V.O.S. Selections Inc., et al. v. United States*, No. 25-00066, ECF No. 82 (Ct. Int'l Trade April 17, 2026), which imposed nearly identical requirements on CBP regarding the reliquidation and refund of IEEPA

Tariffs as those included in the orders issued in *Atmus Filtration, Inc.* and *Euro-Notions Florida, Inc*. *See V.O.S. Selections v. Trump*, No. 2026-1895, ECF No. 1 (Fed. Cir. June 3, 2026).

## V. **Launch of the Consolidated Administration and Processing of Entries ("CAPE") Tool**

46. On April 20, 2026, CBP launched the first phase of the Consolidated Administration and Processing of Entries ("CAPE") tool in the Automated Commercial Environment Data Portal ("ACE Portal"). *See* CSMS # 68315804 – Introduction – Consolidated Administration and Processing of Entries (CAPE) for IEEPA Refunds, April 20, 2026 Deployment (U.S. Customs and Border Prot. April 20, 2026). In the first phase of the CAPE tool ("CAPE I"), CBP implemented procedures to process and refund entries subject to the IEEPA Tariffs that were either unliquidated or up to 80 days past the date of liquidation. *See id.*

47. CBP launched the second phase of the CAPE tool ("CAPE II") on June 29, 2026. *See* CSMS # 69066837 - DEPLOYED – Consolidated Administration and Processing of Entries (CAPE) for IEEPA Refunds - Entries Flagged for Reconciliation (U.S. Customs and Border Prot. June 29, 2026). Under CAPE II, importers and customs brokers could begin filing declarations for entries subject to IEEPA Tariffs flagged for reconciliation (entry types 01, 02, 06) for which the reconciliation entry (entry type 09) has not been filed. *See id*.

48. On October 6, 2026, CBP launched the third phase of the CAPE tool ("CAPE III"), through which CBP will issue refunds of IEEPA Tariffs as to entries that are more than 80 days past the date of liquidation, but only pursuant to importer-specific orders issued by this Court. *See Freestyle World, Inc. v. United States*, No. 26-01088, ECF No. 58 at 4 (Ct. Int'l Trade October 6, 2026).

49. On July 15, 2026, this Court stated that it would enter importer-specific orders directing CBP to reliquidate entries that are more than 80 days past the date of liquidation in each of the approximately 3,700 appeals relating to the IEEPA Tariffs assigned to the Court. *See Euro-Notions Florida, Inc.*, No. 25-00595, ECF No. 46 at 2 (Ct. Int'l Trade July 15, 2026). Since then, the Court has issued importer-specific orders in various appeals directing CBP to reliquidate all entries subject to IEEPA Tariffs, including those entries that are more than 80 days past the date of liquidation, and refund illegally collected IEEPA Tariffs. *See, e.g., Princess Awesome, LLC et al v. United States Customs and Border Prot. et al,* No. 25-00078, ECF No. 25 at 3-5 (Ct. Int'l Trade July 15, 2026).

50. On August 10, 2026, the United States filed its opening brief at the CAFC in *V.O.S. Selections*, in which it contested this Court's authority to issue universal injunctions requiring the government to refund IEEPA duties for all importers. *See* Nos. 2026-1895, -1897, -1899, ECF No. 19 (Fed. Cir. Aug. 10, 2026). In this brief, the United States reiterated that "it intends to comply with importer-specific reliquidation orders . . . ." *Id.* at 19.

## STATEMENT OF CLAIMS

### COUNT 1
### THE COLLECTION OF IEEPA TARIFFS FROM PLAINTIFF IS *ULTRA VIRES*.

51. Paragraphs 1 through 50 are incorporated by reference.

52. The U.S. Supreme Court held that tariffs are a branch of the taxing power and the U.S. Constitution does "not vest any part of the taxing power in the Executive Branch." *Learning Resources, Inc.*, 607 U.S. at 230. The Supreme Court further held that Congress did not delegate the power to impose tariffs to the President under IEEPA because "the terms of IEEPA do not authorize tariffs." *Learning Resources, Inc.*, 607 U.S. at 255.

53. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

54. This suit presents "a case of actual controversy" within this Court's jurisdiction, namely that Defendants acted unlawfully in imposing and collecting IEEPA Tariffs on Plaintiff's imported goods. As the U.S. Supreme Court has already held, IEEPA does not authorize the actions taken by Defendants that resulted in the IEEPA Tariffs being imposed on Plaintiff through the IEEPA Tariff Orders.

## **PRAYER FOR RELIEF AND JUDGMENT**

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Enter judgment in favor of Plaintiff;

(B) Declare that the IEEPA Tariff Orders are unlawful with respect to Plaintiff's entry of imported merchandise;

(C) Order the United States to refund to Plaintiff the tariffs collected under the IEEPA Tariff Orders on both liquidated and unliquidated entries, with interest as provided by law;

(D) Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

(E) Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Gregory J. Spak

Gregory J. Spak
Jessica E. Lynd
Cristina M. Cornejo

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Date: November 5, 2026